UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DRI-EAZ PRODUCTS, Inc., a Washington corporation,<br><br>            Plaintiff,<br><br>     v.<br><br>KAMILLA D. ALLEN, an individual,<br><br>            Defendant. | CASE NO. C12-1638-RSM<br><br>ORDER GRANTING LEAVE TO AMEND AND JOIN PARTY |

This matter comes before the Court upon Plaintiff's Motion for Leave to Amend Complaint (Dkt. # 46) and Motion for Leave to Amend and Join Additional Party (Dkt. # 47). For the reasons that follow, the motions shall be GRANTED.

**I. BACKGROUND**

The facts of this case are familiar to the parties and the Court, and need not be repeated at length. In sum, Dri-Eaz Products, Inc. ("Dri-Eaz") is a Washington corporation that designs, produces and distributes a wide range of restoration, remediation, dehumidifying, and environmental control products.  Defendant Kamilla Allen was an employee of Dri-Eaz, but now

ORDER GRANTING LEAVE TO AMEND AND JOIN PARTY - 1

works for Intertex Inc., a California company that does business as B-Air Blowers (B-Air"). Allen and B-Air are plaintiffs in the consolidated declaratory judgment action that is currently pending before this Court. *Intertex, Inc. v. Dri-Eaz Products, Inc.*, C13-165-RSM. Both actions concern the termination of Allens' employment with Dri-Eaz and subsequent employment with B-Air.

In the instant motions, Dri-Eaz requests leave to amend its Complaint to re-allege claims previously dismissed by the Court without prejudice—claims for misappropriation of trade secrets and tortious interference with contract or a business expectancy—as well as to join B-Air. Allen opposes amendment on the basis of futility. She contends that Dri-Eaz's proposed amendments still fail to state a claim.

## II. DISCUSSION

Federal Rule of Civil Procedure 8(a) requires a plaintiff to set forth in its complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' [] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is plausible if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678.

Federal Rule of Civil Procedure 15(a)(2) directs a court to grant leave to amend if justice so requires. "A district court should grant leave to amend…unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lacey v. Maricopa,* 693 F.3d 896,

926 (9th Cir. 2012). In other words, "requests for leave to amend should be granted with extreme liberality…." *Mirmehdi v. United States,* 689 F.3d 975, 985 (9th Cir. 2012).

For a Rule 15(a) motion, the non-moving party bears the burden of persuading the court that leave should not be granted. *Breakdown Services, Ltd. v. Now Casting, Inc.*, 550 F. Supp. 2d 1123, 1132 (C.D. Cal 2007) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987). The court considers the following five factors in its analysis when leave to amend is requested: (1) bad faith, (2) undue delay, (3) prejudice to opposing party, (4) futility of amendment, and (5) whether the complaint was previously amended. *United States v. Corinthian Colleges*, 665 F.3d 984, 995 (9th Cir. 2011). Ordinarily, there is a presumption that leave to amend should be granted absent a strong showing of one of the five factors. *Eminence Capitol, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

The Court finds the proposed allegations offered by Dri-Eaz sufficient to permit amendment. Allen argues only that amendment is futile because Dr-Eaz fails to state a claim for trade secret misappropriation and fails to state a claim for tortious interference. She does not contend that leave to amend was sought to cause delay, that it was requested in bad faith, or that she will suffer prejudice. Further, Dri-Eaz did not amend its original complaint and leave to amend was requested only after the parties engaged in substantive discovery.

**A. Trade Secret Misappropriation**

Washington's Uniform Trade Secrets Act ("UTSA") defines a trade secret as follows:

"Trade Secret" means information, including . . . a compilation . . . that:

(a)   Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

     (b)    Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

RCW 19.108.010(4).

Dri-Eaz now alleges, *inter alia*, that Allen misappropriated confidential customer information, which it deems trade secrets, and that she used the secret information to target Dri-Eaz's customers on B-Air's behalf. Dkt. # 46-1, ¶¶ 13-14. Dri-Eaz further alleges that it "derives economic value from the information not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its use, and because Dri-Eaz took reasonable efforts to maintain the information's secrecy." *Id.* at ¶ 13. Allen challenges Dri-Eaz's proposed amendments on the basis of futility, arguing that the customer information was readily ascertainable and therefore does not qualify as a trade secret.

    Allen's futility argument, however, rests primarily on factual challenges to the proposed amendments. Dri-Eaz offers embellished allegations concerning Allen's knowledge of personal contact information for Dri-Eaz's customers, which Dri-Eaz alleges constitute trade secrets. Dri-Eaz further asserts that Allen, by virtue of her sales position within Dri-Eaz, misappropriated this information when she used it to solicit sales accounts for B-Air. Although Allen contends that the customer information is readily available to the public and generally known in the industry, these factual assertions are irrelevant. Dri-Eaz need not prove that its customer information qualifies as a trade secret to warrant leave to amend under Rule 15(a). Because customer lists and contact information are "the type[s] of information which can be a protected trade secret if [they] meet[] the criteria of the Trade Secrets Act," *Ed Nowogorski Ins., Inc. v. Rucker*, 971 P.2d 936, 943 (Wash. 1999), it is sufficient that Dri-Eaz identified information that may be cognizable as a trade secret and stated the necessary elements of a UTSA claim.

**B. Claim for Tortious Interference with Contracts and Actual and Prospective Business Expectancies**

Dri-Eaz asserts this claim against both Allen and B-Air, and requests leave to join B-Air. Allen contends that Dri-Eaz fails to state a claim such that the Court should deny both leave to amend and leave to join B-Air.

A tortious interference claim contains five elements. *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.*, 52 P.3d 30, 33 (Wash. Ct. App. 2002). A plaintiff must prove "(1) the existence of a valid contractual relationship or business expectancy; (2) that the defendant had knowledge of that expectancy; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that the defendant interfered for an improper purpose or used improper means; and (5) resulting damage." *Id.*

Allen challenges this claim on the basis that Dri-Eaz failed to allege the third required element: that the interference was intentional and caused a breach or termination of a business expectancy. Dri-Eaz responds that it has satisfied the intentional interference element by alleging that it has "valid contractual business expectancies with its current customer base and potential customers" (Dkt. # 46-1, ¶ 18); that Allen and B-Air's actions were "directed at inducing a termination of Dri-Eaz's contracts and expectancies with its customers and potential customers" (*id.* at ¶ 21); and that they "in fact succeeded in interfering with Dri-Eaz's relationships with customers and potential customers" (*id.*). In *Kieburtz & Associates, Inc. v. Rehn*, the Washington Court of Appeals held that summary judgment was improper where the plaintiff offered information that could satisfy the intentional interference element by demonstrating that the defendants appropriated business from plaintiff's customer. 842 P.2d 985, 989 (Wash. Ct. App. 1992). Here, Dri-Eaz alleges that Allen and B-Air intentionally targeted Dri-Eaz's customers, which resulted in interfering with Dri-Eaz's customer relationships. Taking the allegations in the

1 light most favorable to Dri-Eaz, the allegations are minimally sufficient to warrant leave to
2 amend this claim as well.[1] Accordingly, the Court shall grant both the motion requesting leave to
3 amend and the motion to join B-Air.

### III. CONCLUSION

The Court, having considered the motions, the response and the reply thereto, and the remainder of the record, hereby finds and ORDERS:

(1) Plaintiff's Motion for Leave to Amend (Dkt. # 46) and Motion for Leave to Amend and Join Additional Party (Dkt. # 47) are GRANTED.

(2) The Clerk of the Court is directed to forward a copy of this Order to all counsel of record.

DATED this 22nd day of July 2013.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

---

[1] Although the tortious interference claim may be preempted by the UTSA, the Court does not address the issue now as it was not raised by the parties.